Argued and submitted December 31, 1992, and January 8, reversed and remanded
with instructions on appeal; affirmed on cross-appeal June 23, 1993

Sherry (Hittner) RUSH,
*Appellant - Cross-Respondent,*

*v.*

TROUTMAN INVESTMENT COMPANY,
an Oregon corporation,
dba Troutman's Emporium,
*Respondent - Cross-Appellant.*

(9007-04168; CA A72216)

854 P2d 968

W. Eugene Hallman, Pendleton, argued the cause for appellant - cross-respondent. With him on the briefs were Mautz Hallman Baum & Hostetter, Pendleton, Bruce A. Bottini and Bottini & Bottini, P.C., Portland.

Karen O'Kasey, Portland, argued the cause for respondent - cross-appellant. With her on the briefs were Ridgway K. Foley, Jr., P.C., and Schwabe, Williamson & Wyatt, Portland.

Before Rossman, Presiding Judge, and Richardson, Chief Judge, and De Muniz, Judge.

De MUNIZ, J.

## De MUNIZ, J.

In this negligence action, plaintiff appeals from an order granting defendant's motion for a new trial. We reverse.

On July 13, 1988, plaintiff attended a "sidewalk sale" at the Emporium store in La Grande. She was looking at clothing on a table when she realized that someone had brought out winter sweaters and left them behind her. The sweaters were hanging on a "Z-rack," which is an upright rectangle with a Z-shaped base. Plaintiff touched the sleeve of a sweater and resumed looking at the clothing on the table in front of her. A few minutes later, the rack fell onto the back of her head, bounced off her neck and shoulders and pinned her to the table.

Before trial, the court granted defendant's motion to exclude evidence that defendant had removed the Z-rack from the sale area after the accident occurred.[1] During the trial, plaintiff's attorney asked her about the incident:

"Q. [After the accident, did the store manager] eventually come out?

"A. Yes, he did come out.

"Q. What did he say?

"A. He asked if I was hurt, and I told him I wasn't sure yet. I was still dazed, and I was holding onto the table, trying to get my bearings, and I was kind of feeling around for [my] earring. And he said, 'Well, you don't look hurt to me.' *And he told the sales clerk to get the rack, to get the rack back in the store and put the clothes on tables, that it wasn't safe."* (Emphasis supplied.)

Defendant immediately moved for a mistrial on the ground that plaintiff had impermissibly testified about a subsequent remedial measure that defendant had taken. The court denied the motion.[2]

---

[1] OEC 407 provides, in part:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."

[2] On cross-examination, defendant attempted to impeach plaintiff by asking why her deposition testimony did not include the version of the store manager's

Plaintiff called Nudelman, a consultant in retail management, as an expert witness. The court held a hearing, outside the presence of the jury, to consider his qualifications as an expert. Nudelman stated that he had been in the retail field for about 40 years, had worked with Z-racks in various stores and thought that they should not be used on the sales floor because they are designed for handling merchandise in the back room. The court ruled that he could not testify as a safety expert, but that he could testify about his knowledge of how the racks are used in the retail industry.

On direct examination, plaintiff's attorney asked Nudelman whether he had ever used a Z-rack at a sidewalk sale. The court sustained defendant's objection to that question. On rebuttal, plaintiff's attorney asked, "What items should be used on the sales floor?" Again, the court sustained defendant's objection. Defendant moved for a mistrial again, and the court denied the motion.

After the jury returned a verdict in favor of plaintiff, defendant moved for a new trial on the grounds that the court had admitted evidence of a subsequent remedial measure and that plaintiff had improperly questioned Nudelman. The court ruled:

"The jury's verdict and my reflection on the trial have convinced me that I was wrong when I denied the motions for mistrial.

"* * * * *

"I find now that the combination of trial events * * * prevented a fair trial. The motion for new trial is allowed."[3]

statements that she had just given. In response to defendant's attempt to impeach plaintiff, plaintiff called the sales clerk as a rebuttal witness. The clerk testified:

"Q. Was the rack that fell on [plaintiff] removed?

"A. We didn't put [the Z-racks] out for the rest of the sidewalk sale."

Defendant did not object to that question or move to strike the clerk's answer. Because defendant made no objection, it could not rely on her testimony as a basis for its motion for a new trial. ORCP 64B(6).

[3] The court's comments suggest that the jury's award of damages caused it to reevaluate the rulings that it had made on defendant's mistrial motions. Any disagreement that the court may have had with the amount of the jury's award was not a proper basis for granting a new trial. Or Const, Art VII (amended), § 3; *Foxton v. Woodmansee*, 236 Or 271, 386 P2d 659, 388 P2d 275 (1964).

█ A trial court may grant a new trial on the motion of a party or on its own motion. ORCP 64B(6); ORCP 64G. It may grant the motion only if it has committed an error that "was so prejudicial as to prevent a party from having a fair trial." *Beglau v. Albertus*, 272 Or 170, 181, 536 P2d 1251 (1975); *see Schacher v. Dunne*, 109 Or App 607, 820 P2d 865 (1991), *rev den* 313 Or 74 (1992). Defendant's motion for a new trial was based on the purported errors that the court committed by denying defendant's mistrial motions. Accordingly, our inquiry begins, and ends, with a review of the court's rulings on those motions.

█ Defendant made its first motion for a mistrial in response to plaintiff's testimony about what the store manager said after the accident. The manager's statement had two components. The first was an instruction to the sales clerk to take the Z-rack back into the store and put the clothes on tables. Plaintiff contends that she did not testify about a "subsequent remedial measure," because her testimony only described the manager's instructions to the sales clerk. The issue is whether the manager's instruction was a measure that, "if taken previously, would have made the event less likely to occur." OEC 407. It is reasonable to infer that, had the manager previously instructed the sales clerk to put the Z-rack in the store and place the clothing on tables, the clerk would likely have followed the manager's directions. If that had happened, then the rack would not have fallen on plaintiff. The manager's instructions, if given before the accident, would have made the accident less likely to occur. Instructions to take remedial measures are themselves remedial measures. Plaintiff's testimony about the manager's instructions to the clerk was not admissible as proof of defendant's negligence. OEC 407.

██ The manager's instructions were, however, accompanied by his assessment "that [the Z-rack] wasn't safe." That conclusion was a relevant admission that was not excludable by any rule of evidence. OEC 801(4)(b); *see Washington v. Taseca Homes, Inc.*, 310 Or 783, 802 P2d 70 (1990). In the light of the manager's contemporaneous admission that the rack was not safe, the admission of his instructions to the clerk was unlikely to have caused prejudice to defendant's

case. The court did not abuse its discretion by denying defendant's first motion for a mistrial.

■ Defendant made its second motion for a mistrial in response to plaintiff's allegedly inappropriate questioning of Nudelman. The questions to which defendant objected were arguably within the guidelines of permissible inquiry that the court had set. However, the court sustained defendant's objections and did not allow Nudelman to answer them. The court did not abuse its discretion by denying defendant's second motion for a mistrial.

Defendant's motion for a new trial did not point to any errors that were so prejudicial that they prevented defendant from receiving a fair trial. In fact, the grounds asserted by defendant did not constitute errors at all. The court erred by granting defendant's motion for a new trial.

On cross-appeal, defendant contends that the court erred by denying its motions for a directed verdict on the grounds that there was no proof of causation and there was insufficient evidence of negligence.[4] Defendant contends that the evidence shows only that a Z-rack laden with merchandise fell on plaintiff. It argues that there was no evidence of how or why the accident occurred, or of defendant's knowledge or lack of care.

■ ■ A Z-rack was admitted in evidence. Defendant's employees were familiar with Z-racks and knew that the racks were used for moving merchandise but not for displaying it on the sales floor. The manager admitted that the Z-rack "wasn't safe." Nudelman testified about other types of racks that were designed differently and that would not tip over. Defendant used other types of racks. Although there was no direct evidence of how the rack tipped over, proof of causation may be circumstantial. *E.g., James v. Carnation Co.*, 278 Or 65, 70, 562 P2d 1192 (1977). *Pacific Northwest Bell v. Sanders*, 69 Or App 479, 686 P2d 1069 (1984). There was evidence that the Z-rack was not anchored, that heavy winter sweaters were hanging from it and that it fell onto plaintiff. The court did not err by denying defendant's motions for a directed verdict.

---

[4] Defendant also moved for a directed verdict at the close of plaintiff's case and at the close of trial.

■     Defendant also assigns error to the court's denial of its motions to strike each separate allegation of negligence.[5] It contends that there was insufficient evidence to allow those allegations to be submitted to the jury. As with the motions for directed verdict, there was evidence to create a question for the jury on the challenged allegations.

Our disposition of defendant's cross-appeal makes it unnecessary to address plaintiff's cross-assignments of error on the cross-appeal.

On appeal, reversed and remanded with instructions to vacate order granting a new trial and to reinstate judgment for plaintiff; affirmed on cross-appeal.

---

[5] Plaintiff argues that defendant should have moved for a peremptory instruction that defendant was entitled, as a matter of law, to prevail on those allegations. Defendant's motions to strike were a permissible means of attempting to withdraw those allegations from the jury's consideration. *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 360 n 11, 788 P2d 428 (1990).